UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CARLEEN MARIE BARBUTO

        Plaintiff,

  v.

NANCY A. BERRYHILL,[1] Commissioner of
Social Security,

        Defendant.

**DECISION
and
ORDER**

**17-CV-00156-LGF
(consent)**

---

APPEARANCES:    LAW OFFICES OF KENNETH A. HILLER
           Attorneys for Plaintiff
           STEPHEN RUOTSI, of Counsel
           6000 Bailey Avenue
           Suite 1A
           Amherst, New York 14226

           JAMES P. KENNEDY, JR.
           ACTING UNITED STATES ATTORNEY
           Attorney for Defendant
           LORIE E. LUPKIN
           Assistant United States Attorney, of Counsel
           Federal Centre
           138 Delaware Avenue
           Buffalo, New York 14202, and

           STEPHEN P. CONTE
           Regional Chief Counsel
           United States Social Security Administration
           Office of the General Counsel, of Counsel
           26 Federal Plaza
           Room 3904
           New York, New York 10278

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn Colvin as the defendant in this suit. No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

On June 19, 2018, the parties consented, pursuant to 28 U.S.C. § 636(c) and a Standing Order (Dkt. No. 17), to proceed before the undersigned. (Dkt. No. 17-1). The court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on motions for judgment on the pleadings, filed on November 2, 2017, by Plaintiff (Dkt. No. 12), and on January 31, 2018, by Defendant (Dkt. No. 15).

## BACKGROUND and FACTS

Plaintiff Carleen Marie Barbuto ("Plaintiff"), brings this action pursuant to the Social Security Act ("the Act"), seeking review of the Acting Commissioner of Social Security ("the Commissioner" or "Defendant") decision denying her application for Supplemental Security Income ("SSI") benefits under Title II of the Act, and Social Security Disability Insurance ("SSDI") benefits under Title XVI of the Act, together ("disability benefits"). Plaintiff, born on October 10, 1964 (R. 237), alleges that she became disabled on October 30, 2010, when she stopped working as a result of bipolar disorder, anxiety and depression. (R. 285).

Plaintiff's application for disability benefits was initially denied by Defendant on May 16, 2011 (R. 100), and, pursuant to Plaintiff's request, a hearing was held before Administrative Law Judge William Straub ("Judge Straub" or "the ALJ") on September 3, 2012, in Buffalo, New York, where Plaintiff, represented by Sanaz Eshfani, Esq. ("Eshfani") appeared and testified. (R. 31-61). On July 7, 2014, the Appeals Council reviewed the ALJ's decision, and issued a remand order ("AC Remand Order"),

directing the ALJ to conduct a second hearing on Plaintiff's behalf and include testimony from a Vocational expert ("VE"), regarding Plaintiff's ability to work. (R. 121-23). On October 30, 2014, ALJ Roberty Harvey ("ALJ Harvey"), conducted a second administrative hearing where Plaintiff, represented by Kim Briterby, Esq. ("Briterby"), testified. VE Victor Alberigi also provided testimony. (R. 62-98). The ALJ issued a decision denying Plaintiff's claim on March 4, 2015. (R. 11-23). Plaintiff requested review by the Appeals Council, and on December 21, 2016, the ALJ's decision became Defendant's final decision when the Appeals Council denied Plaintiff's request for review. (R. 1-4). This action followed on February 21, 2017, with Plaintiff alleging that the ALJ erred by failing to find her disabled. (Dkt. No. 1).

On November 2, 2017, Plaintiff filed a motion for judgment on the pleadings ("Plaintiff's motion"), accompanied by a memorandum of law (Dkt. No. 12) ("Plaintiff's Memorandum"). Defendant filed, on January 31, 2018, Defendant's motion for judgment on the pleadings ("Defendant's motion"), accompanied by a memorandum of law (Dkt. No. 15) ("Defendant's Memorandum"). Plaintiff filed a reply to Defendant's motion on the pleadings on February 22, 2018 ("Plaintiff's Reply Memorandum") (Dkt. No. 16). Oral argument was deemed unnecessary.

## DISCUSSION

A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or the decision is based on legal error. *See* 42 U.S.C. 405(g); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence" means 'such relevant

evidence as a reasonable mind might accept as adequate.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000).

A. **Standard and Scope of Judicial Review**

The standard of review for courts reviewing administrative findings regarding disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law judge's findings are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence requires enough evidence that a reasonable person would "accept as adequate to support a conclusion." *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938). When evaluating a claim, the Commissioner must consider "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability (testified to by the claimant and others), and . . . educational background, age and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)). If the opinion of the treating physician is supported by medically acceptable techniques and results from frequent examinations, and the opinion supports the administrative record, the treating physician's opinion will be given controlling weight. *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d). The Commissioner's final determination will be affirmed, absent legal error, if it is supported by substantial evidence. *Dumas,* 712 F.2d at 1550; 42 U.S.C. §§ 405(g) and 1383(c)(3). "Congress has instructed . . . that the

actual findings of the Secretary,[2] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability insurance benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity the inquiry ceases and the claimant is not eligible for disability benefits. *Id.* The next step is to determine whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities as defined in the applicable regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Absent an impairment, the applicant is not eligible for disability benefits. *Id.* Third, if there is an impairment and the impairment, or an equivalent, is listed in Appendix 1 of the regulations and meets the duration requirement, the individual is deemed disabled, regardless of the applicant's age, education or work experience, 20 C.F.R. §§ 404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant with such an impairment is unable to perform substantial gainful activity.[3] 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920. *See also*

---

[2] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

[3] The applicant must meet the duration requirement which mandates that the impairment must last or be expected to last for at least a twelve-month period. 20 C.F.R. §§ 404.1509 and 416.909.

*Cosme v. Bowen*, 1986 WL 12118, at * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646 F.Supp. 1265, 1270 (S.D.N.Y. 1986).

However, as a fourth step, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the applicant can still perform work he or she has done in the past, the applicant will be denied disability benefits. *Id.* Finally, if the applicant is unable to perform any past work, the Commissioner will consider the individual's "residual functional capacity," age, education and past work experience in order to determine whether the applicant can perform any alternative employment. 20 C.F.R. §§ 404.1520(f), 416.920(f). *See also Berry,* 675 F.2d at 467 (where impairment(s) are not among those listed, claimant must show that he is without "the residual functional capacity to perform [her] past work"). If the Commissioner finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits. 20 C.F.R. §§ 404.1520(g), 416.920(g). The applicant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof on the final step relating to other employment. *Berry,* 675 F.2d at 467.

In reviewing the administrative finding, the court must follow the five-step analysis and 20 C.F.R. § 416.935(a) ("§ 416.935(a)"), to determine if there was substantial evidence on which the Commissioner based the decision. 20 C.F.R. § 416.935(a); *Richardson,* 402 U.S. at 410.

**B.      Substantial Gainful Activity**

The first inquiry is whether the applicant engaged in substantial gainful activity. "Substantial gainful activity" is defined as "work that involves doing significant and productive physical or mental duties" done for pay or profit.  20 C.F.R. § 404.1510(a)(b). Substantial work activity includes work activity that is done on a part-time basis even if it includes less responsibility or pay than work previously performed.  20 C.F.R. § 404.1572(a).  Earnings may also determine engagement in substantial gainful activity. 20 C.F.R. § 404.1574.  In this case, the ALJ concluded Plaintiff had not engaged in substantial gainful activity since October 30, 2010, Plaintiff's alleged onset date of disability.  (R. 26).  Plaintiff does not contest this finding.

**C.      Severe Physical or Mental Impairment**

The second step of the analysis requires a determination whether the disability claimant had a severe medically determinable physical or mental impairment that meets the duration requirement in 20 C.F.R. § 404.1509 ("§ 404.1509"), and significantly limits the claimant's ability to do "basic work activities."  If no severe impairment is found, the claimant is deemed not disabled and the inquiry ends.  20 C.F.R. § 404.1420(a)(4)(ii).

The Act defines "basic work activities" as "abilities and aptitudes necessary to do most jobs," and includes physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1521(b) ("§ 404.1521(b)"), 416.921(b).  The step two analysis may do nothing more

than screen out *de minimus* claims, *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995), and a finding of a non-severe impairment should be made only where the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on the claimant's ability to work. *Rosario v. Apfel,* 1999 WL 294727, at *5 (E.D.N.Y. March 19, 1999) (quoting Social Security Ruling ("SSR") 85-28, 1985 WL 56856).

In this case, the ALJ determined that Plaintiff suffered from the severe impairments of bipolar disorder, anxiety disorder, chronic pulmonary obstructive disease ("COPD"), and alcohol abuse disorder, finding Plaintiff's heart disease, gastroesophageal reflux disease ("GERD"), neck and back pain not severe. (R. 14). Plaintiff does not contest the ALJ's findings under step two of the disability analysis

## D. Listing of Impairments

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the criteria for disability under Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P ("The Listing of Impairments"), specifically 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 3.02 ("§ 3.02") (Chronic Pulmonary Insufficiency), 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 12.04 ("§ 12.04") (Affective Disorders), 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 12.06 ("§ 12.06") (Anxiety Related Disorders), and 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 12.09 ("§ 12.09") (Substance Abuse Disorder). In this case, the ALJ found that Plaintiff's impairments did not meet or equal the criteria for disability under §§ 3.02, 12.04, 12.06, and 12.09 of listed impairments. Plaintiff does not contest the ALJ's findings under step three of the disability review process.

## E. Residual functional capacity

Once an ALJ finds a disability claimant does not have a severe medically determinable physical or mental impairment, 20 C.F.R. § § 404.1520(a)(4)(ii), that significantly limits the claimant's physical and mental ability to do work activities, *Berry*, 675 F.2d at 467, and the claimant is not able, based solely on medical evidence, to meet the criteria established for an impairment listed under Appendix 1, the burden shifts to the Commissioner to show that despite the claimant's severe impairment, the claimant has the residual functional capacity to perform alternative work, 20 C.F.R. § 404.1520(a)(4)(iv), and prove that substantial gainful work exists that the claimant is able to perform in light of the claimant's physical capabilities, age, education, experience, and training. *Parker*, 626 F.2d 225 at 231. To make such a determination, the Commissioner must first show that the applicant's impairment or impairments are such that they nevertheless permit certain basic work activities essential for other employment opportunities. *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981). Specifically, the Commissioner must demonstrate by substantial evidence the applicant's "residual functional capacity" with regard to the applicant's strength and "exertional capabilities." *Id.* An individual's exertional capability refers to the performance of "sedentary," "light," "medium," "heavy," and "very heavy" work. *Decker*, 647 F.2d at 294.

In this case, the ALJ found that Plaintiff had the residual functional capacity to perform medium work with limitations to lifting, carrying, pulling or pushing 50 pounds occasionally and 25 pounds frequently, sitting for two hours in an eight-hour workday, standing and walking for six hours, occasional limitations to the ability to understand, remember, and carry out detailed instructions, interact with the general public, respond

to changes in a work setting, deal with stress and make decisions, and no work in areas with exposure to excessive heat or cold. (R. 16-17).

Plaintiff contends that the ALJ's residual functional capacity assessment of Plaintiff is erroneous as the ALJ failed to include findings from consultative examiner Thomas Ryan, Ph.D., ("Dr. Ryan"), Plaintiff's Memorandum at 23-27, and, alternatively, that Dr. Ryan's findings should be rendered stale because Plaintiff's mental impairment deteriorated following Dr. Ryan's evaluation. Plaintiff's Memorandum at 27-30. Plaintiff further contends that the ALJ erred in not performing a function-by-function analysis of Plaintiff's residual functional capacity, and that the ALJ's finding that Plaintiff was able to frequently interact with supervisors and co-workers was unsupported by substantial evidence. Plaintiff's Memorandum at 20-27. Defendant maintains that the ALJ's residual functional capacity assessment included restrictions to Plaintiff's ability to interact with supervisors and co-workers, Defendant's Memorandum at 19-20, and that Dr. Ryan's findings should not be considered stale, as Plaintiff's depression improved prior and subsequent to Dr. Ryan's evaluation of Plaintiff on May 6, 2011. Defendant's Memorandum at 20-22. Plaintiff's motion on this issue is without merit.

As Defendant maintains, substantial evidence establishes that Plaintiff's depression improved following Dr. Ryan's May 6, 2011, consultative psychiatric evaluation of Plaintiff, and that Plaintiff's symptoms from depression worsened only while Plaintiff was drinking. In particular, on July 5, 2011, Marcia Langa ("Ms. Langa"), a counselor at Spectrum Human Services ("Spectrum"), noted that Plaintiff reported an altercation with her daughter after drinking. (R. 650). On July 13, 2011, Ms. Langa noted that Plaintiff telephoned her reporting that she needed to be "put away" because of her

anger, and that Plaintiff directed anger at her boyfriend during a carnival where Plaintiff was drinking. (R. 651). On June 27, 2013, Plaintiff was taken to Erie County Medical Center ("E.C.M.C."), upon calling Crisis Services and expressing thoughts of suicide. Upon intake, Balwant Nagra, M.D. ("Dr. Nagra"), completed a psychiatric evaluation of Plaintiff and noted that Plaintiff reported being upset after having her gas service disconnected and being told that she would be required to pay $1400 to reconnect the service. Dr. Nagra opined that although Plaintiff "ha[d] some of the symptoms of depression," Plaintiff had been drinking on the day of the incident and that Plaintiff denied thoughts of suicide. (R. 888). On May 18, 2012, David Pfalzer, a psychiatric nurse practitioner with Horizon Human Services ("Horizon") ("N.P. Pfalzer"), noted that Plaintiff reported being uncomfortable around large groups of people, was taking her medication as prescribed, expressed no concerns, and remained stable. (R. 666). Substantial evidence thus establishes that Plaintiff's depression improved following Dr. Ryan's consultative examination of Plaintiff on May 6, 2011. Plaintiff's motion on this issue is DENIED.

Plaintiff's further contention that the ALJ erred in not including a narrative regarding Plaintiff's ability to interact with supervisors and/or co-workers in the ALJ's residual functional capacity assessment of Plaintiff, Plaintiff's Memorandum at 25-26, is also without merit. In accordance with the AC Remand Order (R. 121-22), ALJ Harvey obtained testimony from VE Alberigi, to whom the ALJ posed hypothetical questions as to whether an individual similar to Plaintiff with non-exertional limitations that include occasional limitation to the ability to understand, remember, and carry out detailed instructions, interact with the general public, respond to changes in the work setting, deal

with stress, and make decisions, would be able to perform work in the regional or national economy. (R.94-98). In response to the ALJ's hypothetical, the VE testified that Plaintiff, including the non-exertional limitations posed by the ALJ to the VE, would be able to perform Plaintiff's past relevant work as a personal care assistant and dietary aide. (R. 95). Plaintiff fails to cite, and a plain reading of the record fails to establish, any evidence that Plaintiff's mental impairment results in a limitation to Plaintiff's ability to interact with supervisors and/or co-workers. As indicated in the foregoing, Discussion, *supra*, at 10-11, Plaintiff's depression worsened only as a result of Plaintiff's drinking alcohol, and Plaintiff's self-reported fear of being in crowds is otherwise unsupported by evidence in the record.

## **CONCLUSION**

Based on the foregoing, Plaintiff's motion (Doc. No. 12) is DENIED; Defendant's motion (Doc. No. 15) is GRANTED. The Clerk of Court is ordered to close the file. SO ORDERED.

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED: October 4, 2018
          Buffalo, New York